Robert F. Brennan, Esq. {S.B.#132449}
Robert A. Wiener, Esq. {S.B.#132847}
**Brennan, Wiener & Associates, A P.C.**
3150 Montrose Avenue
La Crescenta, CA 91214
Tel: (818) 249-5291
Fax: (818) 249-4329
Email: rbrennan@brennanlaw.com

Attorneys for Plaintiff D.L. Edmonson Selective Service Inc. dba Selective Limousine Service

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.L. EDMONDSON SELECTIVE SERVICE INC. dba SELECTIVE LIMOUSINE SERVICE, a Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> LCW AUTOMOTIVE CORPORATION, a corporation; DISTRIBUTION OF LIMOUSINES, INC., a corporation; FORD MOTOR COMPANY, a corporation; MODERN TECHNOLOGIES GROUP, INC., and DOES 1-50, Inclusive, <br><br> Defendants | Case No.: CV07-3303 CAS (VBKx) <br><br> **PLAINTIFF'S TRIAL BRIEF** <br><br> DATE: August 18, 2009 <br> TIME: 9:00 a.m. <br> MEDIATOR: Hon. Christina A. Snyder <br> LOC.: Federal Court <br>      312 N. Spring Street <br>      Los Angeles, CA |

---
1
---
**PLAINTIFF'S TRIAL BRIEF**

## A. **FACTS OF THE CASE**

In 2005 Defendants Ford Motor Company [FORD] and LCW Automotive Corporation [LCW] manufactured a 2006 Lincoln Limo VIN: 1L1FM88W76Y6002259 ["subject vehicle"]. The subject vehicle was leased to Plaintiff D.L. Edmonson Selective Service Inc. dba Selective Limousine Service, on or about January of 2006 through Advantage Funding Commercial Capital Corp. Plaintiff made a down payment of $19,581.18 and agreed to 46 payments of $1,795.00 equaling a total lease price of $102.151.18.

Plaintiff alleges that the subject vehicle comes within §1793.22(e), in that it is a business use vehicle but weighs less than 10,000 lbs and there are less than five vehicles registered to plaintiff in California.

In connection with the lease transaction, Plaintiff received the express warranties of Defendants FORD and LCW in the written statements of Defendants, which were issued directly to plaintiff and which accompanied the product.

Plaintiff subsequently discovered that the subject vehicle failed to conform to one or more of the warranties, in that it was defectively manufactured, designed and/or assembled. Plaintiff thereon attempted to act on the express warranties, as subject to the requirements of California's Song-Beverly Act (the "Act"), under which Defendants FORD and LCW were required to and did maintain in-state service and repair facilities. Plaintiff settled with FORD at a settlement conference before the Hon. Victor Kenton in 2008.

Plaintiff has been experiencing reoccurring and severe electrical system problems with the subject vehicle virtually from the start. The main manifestation of these electrical problems is the persistent failure of the heating system to heat the passenger compartment of the limo. Plaintiff has had to turn down or farm out

evening and winter-time jobs because the passenger compartment will not heat properly.

The following paragraphs set forth a brief history of the repairs to the subject vehicle, which may not include all of the repair visits or repair attempts.

On January 9, 2006, Plaintiff presented the vehicle to LA Limousine because a) the windows needed to be tinted; b) to install the GPS system; c) there were wiring problems between the clock and the TV control; d) the rear air vent, to the right of the control unit, would not close; e) there was static with the intercom system; f) there were three indents over the top of the fifth door; g) to install front floor mats; h) there was paint on the fifth door; i) the left side of the car had swirl marks; j) the area around the XM antenna had a scratch; k) the rear corners had vinyl that was loose; l) the lights behind the front grill were inoperable; m) the DVD player would shut off when the TV was off; n) there was a dent by the driver side window; o) on the inside of the fifth door the carpet panel was loose; p) there was a dent in the bar; q) the backings were missing from the front door passenger side and on the side pillar; and r) the steering wheel had not been centered. The mileage at the time was 2,755.

On March 23, 2006, Plaintiff presented the vehicle to Professional Auto Tech for a list of repairs a) to remove the interior in order to re-tint; b) to add a dimmer switch to the light switchboard; c) the fiber optic wheel was making noises; d) the driver's clock was inoperable; e) the wig-wag light in the front grill was out; f) while the vehicle was in motion the intercom was inoperable; g) there was a loose opera light on the fifth door; h) to adjust the center seatback; i) to install a stand for GPS; j) to install the missing clock from the dash; k) to install the missing inner panel between the glass and the post cover; and l) to re-finish the bar top. The mileage at the time was 7,708.

On May 10, 2006, Plaintiff presented the vehicle to Professional Auto Tech because a) there were tears in the vinyl; b) the secondary alternator back bolt was stripped; c) the opera light in the fifth door was loose; d) the speaker for the intercom would cut out; e) to rotate the tires; f) and all three computer control units, the front control unit, the rear control unit and the actual brain behind the seat had to be replaced. The mileage at the time was 10,562.

On September 5, 2006, Plaintiff presented the vehicle to Professional Auto Tech because a) the computer control board would flicker when the AC was trying to be adjusted; b) the DVD player was inoperable; c) the grab handles were peeling off; and d) the opera light had burnt out. The computer control board had to be replaced for the second time. The mileage at the time was 15,889.

On September 22, 2006, Plaintiff presented the vehicle to Professional Auto Tech because a) the heater was inoperable, the computer control panel was inoperable; b) to check the clock on the MTG panel; c) the fabric on the third seat had been coming loose; d) the driver side vinyl had been coming loose; e) the DVD player would not shut off with the main power; f) the intercom was inoperable; g) the fifth opera light was inoperable; h) the fiber optic light in the console was out; and i) to check the rear speakers. This was the third time the computer control board had to be replaced. The mileage at the time was 23,963.

On December 4, 2006, Plaintiff presented the vehicle to Professional Tech because a) the rear heater was not working; b) the pin dots had burned out; c) the left rear opera light post was cut too short; and d) the DVD power would sty on when the rear power was turned off; e) to remove and replace the control panel. This was the fourth time the control board had to be replaced. The mileage at the time was 29,511.

Plaintiff has very real concerns that the subject vehicle is unreliable to drive in its current condition due to the problems with the vehicle, including without

---
4
**PLAINTIFF'S TRIAL BRIEF**

limitation, the HVAC computer control panel which has repeatedly been replaced and failed, and body electrical problems. Defendants FORD and LCW have not repaired the subject vehicle's defects as of this date and have refused to replace the subject vehicle or refund plaintiff for its lease obligation and payments.

**B. SONG-BEVERLY ACT, aka "LEMON LAW".**

The pertinent provision of law is Song-Beverly's express warranty obligations, found at Civ. Code Section 1793.2 (d):

"...if the manufacturer or its representative in this state does not service or repair the goods to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either replace the goods or reimburse the buyer in an amount equal to the purchase price paid by the buyer, less that amount directly attributable to use by the buyer prior to the discovery of the nonconformity."

Under Civ. Code Section 1794, violation of the express warranty provisions under Song-Beverly permit a consumer to seek the following damages:

  a. Reimbursement damages as described in Civ. Code Section 1793.2 (d).

  b. Incidental and consequential damages.

  c. A civil penalty of up to two times plaintiff' damages for any Song-Beverly violation deemed willful, under Civ. Code Section 1794 (c). (Plaintiff cannot recover a civil penalty for a violation of the implied warranties only.)

  d. Attorney's fees, costs and expenses under Civ. Code Section 1794 (d).

There are CACI jury instructions for Song-Beverly, which plaintiff is submitting and which cover each of the elements discussed above, including the civil penalty and the implied warranty contentions.

### Ultimate Facts of Song-Beverly Express Warranty Claim:

i. That plaintiff leased the vehicle as manufactured by LCW;

ii. That LCW provided a written warranty or warranties to plaintiff in connection with the purchase;

iii. That the vehicle had nonconformities which arose or existed during the warranty period;

iv. That plaintiff presented the vehicle to LCW or its authorized service and repair facilities for repairs to the nonconformities;

v. That LCW or its authorized service and repair facilities failed or refused to repair the nonconformities within a reasonable number of repair attempts;

vi. That LCW failed or refused to repurchase the vehicle or offer a replacement vehicle to plaintiff after the repair attempts had failed to repair the vehicle;

vii. Plaintiff's actual damages, including the purchase price plus incidental and consequential damages;

viii. That LCW willfully violated the provisions of the Song-Beverly Act; and,

ix. The amount of a civil penalty against LCW, which can be up to two times' plaintiff's actual damages.

### C. DAMAGES

Below are itemized demand figures the plaintiff sent Defendants in a March 9, 2009:

Vehicle Purchase:

    down payment .................................................................$19,581.18

| | |
|---|---|
| payments made to date | $71,894.33 |
| | (37 @ $1,943.09) |
| lease payoff | $40,804.89 |
| | (est., 10 payments left) |

Incidental Expenses

| | |
|---|---|
| out-of-pocket repairs to vehicle | $2,463.98 |
| registration | $4,600.00 |
| rental | $0 |
| inspection | $250.00 |
| other (fuel, hotels, food | $505.00 |
| other (trips to LCW) | $2,420.00 |
| other (wheels/tires) | $1,380.32 |
| insurance | $17,630.00 |
| work farmed out during winter months | $18,889.55 |

**Total Client damages (not including attorney fees)**
............*$179,939.70*

| | |
|---|---|
| Attorney Fees/Costs | To Be Determined |
| Civil Penalties | $359,879.40 |

D. **SUMMARY OF PROCEEDINGS TO DATE**

Plaintiff filed the Complaint originally on March 15, 2007 in the Los Angeles Superior Court. Defendants removed the case to Federal Court on May 18, 2007. On June 8, 2007, Defendant LCW filed a motion to transfer venue to

the United States District Court for the Western District of Texas, and that motion was denied. Plaintiff has amended the Complaint twice. The current, Second Amended Complaint, alleges 1) Violation of Song Beverly Consumer Warranty Act; and 2) Breach of Express Warranties Pursuant to Commercial Code Section 2313.

### E. HISTORY OF PAST SETTLEMENT DISCUSSIONS

There are ongoing settlement discussions in this matter as of the date of the preparation of this trial brief.

Dated: August 14, 2009                Brennan, Wiener & Associates, A P.C.

By: _____
Robert F. Brennan, Esq.
Attorneys for Plaintiff
D.L. Edmonson Selective Service Inc.
dba Selective Limousine Service

---
8
**PLAINTIFF'S TRIAL BRIEF**

## PROOF OF SERVICE

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 3150 Montrose Avenue, La Crescenta, CA 91214.

On **August 14, 2009**, I served the foregoing document described as **PLAINTIFF'S TRIAL BRIEF** by placing:

[x] the original [x] true copies thereof in sealed envelopes addressed as follows:

Michael T. Taurek, Esq.
John E. Nuelle, Esq.
GREEN & HALL, A PROFESSIONAL CORP.
1851 East First Street, 10th Floor
Santa Ana, California 92705-4052

Fax (714) 918-6996

Oliver D. Griffin, Esq. (Pro Hac Vice)
SPECTOR GADON & ROSEN
1635 Market Street, 7th Floor
Philadelphia, PA 19103

Fax (215) 241-8844

[ ] *I deposited such envelope in the mail at La Crescenta, California. The envelope was mailed with postage thereon fully prepaid.

[x] <u>Federal:</u> *I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the above is true and correct.

Executed on **August 14, 2009**, at La Crescenta, California.

Isabel Grubbs